UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>Defendant. | Case No. 16-cv-02041-HSG<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 66, 68 |

Pending before the court is the motion for partial summary judgment filed by Defendant U.S. Department of Justice, Dkt. No. 66, and the cross-motion for partial summary judgment filed by Plaintiff Electronic Frontier Foundation ("EFF"), Dkt. No. 68. For the following reasons, the Court **GRANTS** Defendant's motion and **DENIES** Plaintiff's motion.

## I. BACKGROUND

On April 19, 2016, EFF filed this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking release of records concerning applications to the Federal Intelligence Surveillance Court ("FISC") and related opinions and orders. Dkt. No. 1 ("Compl.") ¶ 1.

According to the Complaint, FISC reviews applications from the government concerning national security surveillance. *Id.* ¶ 7. Historically, FISC opinions and appellate decisions by the Foreign Intelligence Surveillance Court of Review ("FISCR") were ex parte and classified. *Id.* ¶ 8. However, the USA FREEDOM Act, which was passed in the wake of the September 11th, 2001 terrorist attacks, required a declassification review of "significant" FISC and FISCR decisions. *Id.* ¶¶ 9–12. Plaintiff alleges that recently the government has been using court orders to pressure private companies to provide access to encrypted communications, as was allegedly

1  done following the San Bernardino shootings. *Id.* ¶¶ 14–18. Through this FOIA action, Plaintiff
2  "seeks to inform the public about the extent to which the government has used FISA and the FISC
3  to compel private companies into providing assistance that would undermine the safety and
4  security of millions of people who rely on software and the devices that run them, such as the
5  iPhone, every day." *Id.* ¶ 19.

6        Currently at issue is one FOIA request: a request for all decisions, orders, or opinions
7  issued by FISC or FISCR between 1978 and June 1, 2015, that include a significant construction
8  or interpretation of any law, including a significant construction of a "specific selection term"
9  under the USA FREEDOM Act. *See id.* ¶ 31; Dkt. No. 68 at 3. The government identified
10 seventy-nine (79) responsive FISC opinions, and eventually agreed to release seventy-three (73) of
11 those opinions, in full or in part. Dkt. No. 68 at 3–4. The remaining six opinions are the subject
12 of these cross motions for summary judgment. The government contends that these six documents
13 are exempted from disclosure under FOIA Exemptions 1, 3, 6, 7(A), 7(C), and 7(E). Dkt. No. 66
14 at 1. Plaintiff argues that the USA FREEDOM Act requires the government to conduct a
15 declassification review and either declassify and release the six opinions, or create an unclassified
16 summary of each of the opinions. Dkt. No. 68 at 2. Plaintiff contends that because the
17 government has not complied with the declassification requirements, it has failed to meet its
18 burden under FOIA to withhold the six documents. *Id.* at 7. Plaintiff articulates a single claim for
19 relief: violation of FOIA for wrongful withholding of the six undisclosed agency records. Compl.
20 ¶¶ 38-41.

21 **II.    SUMMARY JUDGMENT STANDARD**

22       Summary judgment is proper when a "movant shows that there is no genuine dispute as to
23 any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).
24 A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*
25 *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the
26 record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* The
27 Court views the inferences reasonably drawn from the materials in the record in the light most
28 favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). If a court finds that there is no genuine dispute of material fact as to only a single claim or defense or as to part of a claim or defense, it may enter partial summary judgment. Fed. R. Civ. P. 56(a).

With respect to summary judgment procedure, the moving party bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex Corp.*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp.*, 477 U.S. at 323.

### A. FOIA

FOIA, codified as 5 U.S.C. § 552, "was enacted to facilitate public access to Government documents." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (quotations omitted). The goal of FOIA is to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Id.* (quotations omitted). At the same time, FOIA contemplates that the government may have legitimate reasons for withholding some information from the public. *Id.* Accordingly, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions for specific categories of material." *Milner v. Dep't of Navy*, 562 U.S. 562, 564 (2011). These nine FOIA exemptions are "explicitly made exclusive and must be narrowly construed." *Id.* at 565 (quotation omitted).

A defendant agency "must show that its search for responsive records was adequate, that any claimed exemptions actually apply, and that any reasonably segregable, non-exempt parts of records have been disclosed after redaction of exempt information." *Light v. Dep't of Justice*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013); *accord Lahr*, 569 F.3d at 973; *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008). The agency bears the burden to show that it has complied with its obligations under FOIA. 5 U.S.C. § 552(a)(4)(B). "[G]overnment agencies seeking to withhold documents requested under the FOIA have been required to supply the opposing party and the court with a '*Vaughn* index,' identifying each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption. The purpose of the index is to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Wiener v. F.B.I.*, 943 F.2d 972, 977–78 (9th Cir. 1991) (citations and quotations omitted).

FOIA cases are typically decided on motions for summary judgment because the facts are rarely in dispute. *See Minier v. Cent. Intelligence Agency*, 88 F.3d 796, 800 (9th Cir. 1996). On a motion for summary judgment, a district court analyzes the withholding of documents *de novo*. 5 U.S.C. § 552(a)(4)(B). FOIA permits a district court to enjoin a defendant agency from

withholding agency records or to order a defendant agency to produce any improperly withheld records. *Id.*

### B. USA FREEDOM Act

The USA FREEDOM Act was signed into law on June 2, 2015. The purpose of the USA FREEDOM Act was to reform the data collection process under existing statutory schemes and provide greater oversight provisions to protect the privacy and civil liberties of individuals. H.R. Rep. No. 114-109, at 6 (2015). Relevant here, Section 402 of the USA FREEDOM Act ("Section 402"), codified as 50 U.S.C.A. § 1872, requires conditional declassification of certain FISC and FISCR opinions:

> Declassification Required.--Subject to subsection (b), the Director of National Intelligence, in consultation with the Attorney General, shall conduct a declassification review of each decision, order, or opinion issued by the Foreign Intelligence Surveillance Court or the Foreign Intelligence Surveillance Court of Review (as defined in section 601(e)) that includes a significant construction or interpretation of any provision of law, including any novel or significant construction or interpretation of the term `specific selection term', and, consistent with that review, make publicly available to the greatest extent practicable each such decision, order, or opinion.

Pub. L. No 114-23, § 402(a) (2015); 50 U.S.C. § 1872(a).

Section 402 further provides for the production of an unclassified summary of certain opinions that cannot be released:

> The Director of National Intelligence, in consultation with the Attorney General, may waive the requirement to declassify and make publicly available a particular decision, order, or opinion under subsection (a), if--
>   (1) the Director of National Intelligence, in consultation with the Attorney General, determines that a waiver of such requirement is necessary to protect the national security of the United States or properly classified intelligence sources or methods; and
>   (2) the Director of National Intelligence makes publicly available an unclassified statement prepared by the Attorney General, in consultation with the Director of National Intelligence--
>     (A) summarizing the significant construction or interpretation of any provision of law, which shall include, to the extent consistent with national security, a description of the context in which the matter arises and any significant construction or interpretation of any statute, constitutional provision, or other legal authority relied on by the decision; and
>     (B) that specifies that the statement has been prepared by the Attorney General and constitutes no part of the opinion of the Foreign Intelligence Surveillance Court or the Foreign Intelligence

Surveillance Court of Review.

Pub. L. No. 114-23, § 402(c) (2015); 50 U.S.C. § 1872(c).

## III. DISCUSSION

The pivotal issue here is whether Section 402 bars Defendant from relying on FOIA Exemptions 1 and 3 to withhold the six FISC opinions, because, as Plaintiff alleges, there is no evidence that a declassification review was conducted, as required by Section 402. Dkt. No. 68 at 7. Put another way, the Court must decide whether it can essentially enforce the declassification mandate under Section 402 through a FOIA action. This may include determining whether the USA FREEDOM Act applies retroactively. *See* Dkt. No. 66 at 19–25; Dkt. No. 68 at 11–14. If Section 402 does not prevent the government from relying on the FOIA exemptions, then the inquiry is whether the government properly withheld the six opinions and whether the *Vaughn* index it provided was sufficient to satisfy FOIA requirements.

### A. FOIA AND THE FREEDOM ACT

The parties agree that Section 402 creates no private cause of action to enforce the declassification of FISC opinions. *See* Dkt. No. 66 at 16; Dkt. No. 70 at 4. Plaintiff contends that because the government did not submit evidence that it has performed the declassification review required by Section 402, then either (1) the six opinions are improperly classified and not subject to withholding under FOIA Exemptions 1 or 3, or (2) the *Vaughn* index provided by the government is inadequate to serve as a "declassification summary," because it does not provide the information required in Section 402. *See* 50 U.S.C.A. § 1872(c)(2)(A) (stating that summary "shall include, to the extent consistent with national security, a description of the context in which the matter arises and any significant construction or interpretation of any statute, constitutional provision, or other legal authority relied on by the decision.").

Although Plaintiff presents a creative argument, the Court agrees with Defendant that Plaintiff cannot enforce Section 402 through this FOIA action. *See* Dkt. No. 69 at 2. While courts have not addressed this specific issue, the Court is persuaded by the decisions of courts interpreting FOIA's relationship with other disclosure statutes. *See, e.g.*, *Minier*, 88 F.3d at 799.

In *Minier*, plaintiff sought disclosure from the Central Intelligence Agency ("CIA") under

FOIA of information regarding a potential CIA agent's alleged involvement in President John F. Kennedy's assassination. 88 F.3d at 799. The CIA denied plaintiff's request under FOIA Exemptions 1 and 3. *Id*. at 800. The plaintiff did not contest the applicability of the exemptions, but instead attempted to circumvent them by arguing that the President John F. Kennedy Assassination Records Collection Extension Act of 1994 (the "JFK Act") mandated disclosure of the requested information under FOIA. *Id*. at 802. The JFK Act provides that "all Government records concerning the assassination of President John F. Kennedy should carry a presumption of immediate disclosure." *Id*. (citing JFK Act § 2(a)(2)). Congress's enactment of the JFK Act in part was a response to FOIA "prevent[ing] the timely disclosure of records relating to the assassination of President John F. Kennedy." *Id*. (citing JFK Act § 2(a)(5)).

The Ninth Circuit rejected the plaintiff's argument (and noted that the D.C. Circuit and First Circuit rejected similar arguments), reasoning that the JFK Act explicitly provided that "[n]othing in this Act shall be construed to eliminate or limit any right to file requests ... or seek judicial review of the decisions pursuant to [FOIA]." *Id*. (citing JFK Act § 11(b)) (brackets in original). "Had Congress intended the JFK Act to alter the procedure for reviewing FOIA requests, presumably it would have expressly said so." *Id*.; *see also Assassination Archives and Research Center v. Department of Justice*, 43 F.3d 1542, 1544 (D.C. Cir. 1995) ("There is no evidence that Congress intended that the JFK Act standards be applied to FOIA review of documents involving the Kennedy assassination."). Therefore, even though it was "undoubtedly true that the JFK Act was motivated by less than adequate FOIA responses to Kennedy assassination record requests," the purpose was to require agencies to release information relating to the Kennedy assassination, not to override the ability of the government to claim proper FOIA exemptions. *Minier*, 88 F.3d at 802; *see also Assassination Archives*, 43 F.3d at 1544 ("Congress evidently hoped that prompt administrative application of the Act's broader criteria for release would moot considerable FOIA litigation and would benefit those FOIA requesters who had long sought access to assassination records.").

While the USA FREEDOM Act does not explicitly refer to FOIA, the JFK Act is similar in that it mandates disclosure of records that the FOIA exemptions may protect from disclosure. *See*

7

JFK Act § 2(a)(2) (requiring disclosure of records concerning the assassination of President John F. Kennedy); 50 U.S.C.A. § 1872(a) (requiring disclosure of FISC opinions that are declassified). Both statutes also have their own mechanism for review: under the JFK Act, the Assassination Records Review Board evaluates the documents to determine whether they qualify as assassination records, *see Assassination Archives*, 43 F.3d at 1543, and under the USA FREEDOM Act, the Director of National Intelligence, in consultation with the Attorney General, conducts a declassification review to determine if FISC documents were properly classified. 50 U.S.C. § 1872. Absent clear evidence that Congress intended Section 402 to be applied when reviewing FOIA exemptions, the Court will not impute such an intent to hybridize two statutory schemes. *See Assassination Archives*, 43 F.3d at 1544 ("We thus find no statutory warrant for creating a private right of action to enforce the JFK Act, either directly by implying such a cause of action, or through the subterfuge of judicially hybridizing the two acts."). The purpose of Section 402 was to allow for more transparency of FISC and FISCR opinions by requiring the Director of National Intelligence and the Attorney General to release information that they determined were not classified, not to override "the ability of the government to claim proper FOIA exemptions." *See Minier*, 88 F.3d at 802

The Court is also persuaded by Defendant's argument that Plaintiff's theory would require the Court to mandate a remedy that lies outside of FOIA. Dkt. No. 69 at 5. Although Plaintiff contends it is only requesting that the Court "interpret Section 402, not enforce it," Dkt. No. 70 at 3, Plaintiff plainly seeks to enforce Section 402's requirements. If the Court finds that the USA FREEDOM Act imposes additional requirements that Defendant failed to satisfy when claiming FOIA Exemptions 1 and 3, then according to Plaintiff, Defendant must either release the opinions, or include unclassified summaries as part of its *Vaughn* Index to reasonably justify withholding them. Dkt. No. 70 at 7. Assuming there is no dispute as to whether these six opinions were properly classified, Plaintiff would have the Defendant provide the unclassified summaries as part of its *Vaughn* index. Dkt. No. 68 at 17. But the content of the unclassified summaries is different than what is required under FOIA. Under FOIA, a *Vaughn* index requires the government to "identify[] each document withheld, the statutory exemption claimed, and a

8

1    particularized explanation of how disclosure of the particular document would damage the interest
2    protected by the claimed exemption." *See Freedom of the Press Found. v. United States Dep't of*
3    *Justice*, 241 F. Supp. 3d 986, 996–97 (N.D. Cal. 2017) (quotations omitted).  The unclassified
4    summaries, by contrast, require a statement by the Attorney General that summarizes the actual
5    construction or interpretation of any law and a description of the context, which are not required
6    under FOIA.  *See* 50 U.S.C. § 1872(c).  The Court agrees with Defendant that using FOIA to
7    enforce Section 402 would require the Court to impose remedies outside of FOIA's requirements.
8    *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 ("The [FOIA] Act
9    does not obligate agencies to create or retain documents; it only obligates them to provide access
10   to those which it in fact has created and retained.").

11          Plaintiff relies on two cases for its proposition that the Court may interpret the USA
12   FREEDOM Act to determine whether information is properly withheld under FOIA.  *See* Dkt. No.
13   68 at 8 (citing *Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612 (D.C. Cir. 2011) and
14   *Long v. U.S. I.R.S.*, 742 F.2d 1173 (9th Cir. 1984)).  Both cases involve interpretation of a
15   statutory or executive order authority proffered by the government as justification for FOIA
16   withholding.  These cases are distinguishable from this action.  In *Long*, the statue at issue, section
17   6103 of the Economic Recovery Tax Act ("ERTA"), was a nondisclosure statute amended for the
18   specific purpose of targeting two previous FOIA cases that sought disclosure of the same
19   documents.  742 F.2d at 1176 ("It is clear from the legislative history of the amendment that
20   Congress was targeting these [two previous FOIA cases].").  The Ninth Circuit held that section
21   6103 qualified as an exemption statue under FOIA Exemption 3, because Exemption 3 was
22   "designed to give effect to just such explicit nondisclosure statutes as section 6103."  *Id*. at 1178.
23   The *Long* court also found it persuasive that section 6110, another section in the ERTA, had its
24   own set of procedures for disclosure requests, indicating that Congress intended section 6110 to be
25   excluded from FOIA.  *Id*.  Section 6110 was, like the JFK Act and Section 402, a disclosure
26   provision rather than a nondisclosure provision.  *See* 26 U.S.C. § 6110(a) ("Except as otherwise
27   provided in this section, the text of any written determination and any background file document
28   relating to such written determination shall be open to public inspection at such place as the

9

Secretary may by regulations prescribe."). The *Long* court found that the absence of similar procedures in section 6103 reflected Congress's intent that section 6103 would fall within the FOIA regime. 742 F.2d at 1178. In contrast, this action concerns the opposite situation: Plaintiff seeks the disclosure of documents under Section 402 despite FOIA exemptions protecting them from disclosure. The Court finds that Section 402 is more similar to the disclosure statute of section 6110 of ERTA than to section 6103.[1]

Accordingly, the Court finds that it does not have the authority to engraft Section 402's declassification mandate in evaluating whether Defendant has properly asserted FOIA exemptions. As such, the Court does not need to address the issue of whether Section 402 applies retroactively.[2]

### B. FOIA EXEMPTIONS

Having reached the conclusion that Section 402 does not impose additional requirements in a FOIA action, the Court now turns to whether the government properly withheld the six documents under FOIA exemptions. To properly withhold the documents, the government bears the burden of showing that "its search for responsive records was adequate, that any claimed exemptions actually apply, and that any reasonably segregable, non-exempt parts of records have been disclosed after redaction of exempt information." *Light*, 968 F. Supp. 2d 11 at 23. Plaintiff does not challenge the adequacy of the government's search, but does dispute whether the government has demonstrated the latter two requirements. *See* Dkt. No. 66 at 4.

"FOIA's strong presumption in favor of disclosure places the burden on the government to show that an exemption properly applies to the records it seeks to withhold." *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 772 (9th Cir. 2015). When a government agency seeks to withhold

---

[1] *ACLU* is similarly distinguishable. In *ACLU*, the D.C. Circuit held that it was proper for the government to interpret executive orders to determine the classification of certain documents, since that is exactly what FOIA Exemption 1 requires the government to do. 628 F.3d at 619–25; *see* 5 U.S.C. § 522(b)(1) (preventing disclosure of documents "specifically authorized under criteria established by an Executive order to be kept secret").

[2] Although the Court need not address this issue, the Court notes that a district court in the District of Columbia has held that Section 402 does not apply retroactively. *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 296 F. Supp. 3d 109, 127 (D.D.C. 2017) ("What is more, the FREEDOM ACT was enacted in June 2015—well after the reports at issue here were created—and there is nothing to indicate that Congress intended the statute to apply retroactively to prior FISC decisions.")

documents under FOIA exemptions, courts have required the agency "to supply the opposing party and the court with a *Vaughn* index, identifying each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption." *Wiener*, 943 F.2d at 977. The purpose of a *Vaughn* index and any accompanying affidavits is to "afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding," and thus partially restore the adversary process to judicial review of the agency's decision. *Id*. at 977–78. "Specificity is the defining requirement of the *Vaughn* index." *Id*. at 979.

"Where the government invokes FOIA exemptions in cases involving national security issues, [courts] are required to accord substantial weight to the agency's affidavits." *Hamdan*, 797 F.3d at 769 (quotations omitted). A court must be mindful of its "limited institutional expertise on intelligence matters, as compared with the executive branch." *Id.* at 770. However, the affidavits still "must describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemptions, and show that the justifications are not controverted by contrary evidence in the record or by evidence of agency bad faith." *Id*. at 769 (quotations omitted). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Id*. at 774 (quotations omitted). "If the affidavits contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption, the district court need look no further." *Lane v. Dep't of Interior*, 523 F.3d 1128, 1135–36 (9th Cir. 2008) (quotations omitted).

Here, Defendant is withholding the following six documents in their entirety under the following FOIA exemptions:

| Doc. # | Document Type | Exemption |
|---|---|---|
| 1 | FISC Supplemental Order | 1, 3, 6, 7(A), 7(C), 7(E) |
| 2 | FISC Primary Order | 1, 3, 6 |
| 3 | FISC Amendment to Primary Order | 1, 3, 6 |
| 4 | FISC Primary Order | 1, 3, 6 |
| 5 | FISC Supplemental Opinion | 1, 3, 6 |
| 6 | FISC Order | 1, 3 |

11

Dkt. No. 66 at 4. Plaintiff does not challenge the applicability of FOIA Exemption 6 and 7(C), and thus only challenges the applicability of FOIA Exemptions 1, 3, 7(A), and 7(E). *Id.* The main thrust of Plaintiff's arguments regarding Exemptions 1 and 3 is that Defendant did not comply with the USA FREEDOM Act, the same contention that the Court rejected above. *See* Dkt. No. 68 at 15 ("The government cannot show that the Six Opinions have been properly classified to Exemption 1's standard because they have not demonstrated that they have complied with USA FREEDOM Act's declassification review requirements."); 16 ("With respect to [Exemption 3 statutes,] USA FREEDOM, however, not only authorizes the Director of National Intelligence to disclose the records at issue here, but requires him to disclose them 'to the greatest extent practicable' or to certify that they cannot be disclosed and to create a declassified summary of them.") The Court now addresses whether Defendant properly withheld the six documents under the FOIA exemptions.

### i. Exemption 1 – Classified Information

Defendant withheld six documents in full, consisting of 46 pages total, under Exemption 1 as containing classified information in accordance with Executive Order 13526 § 1.1(a) and 1.2(a). Dkt. No. 66-1, Ex. A ("Gaviria Decl.") ¶¶ 20–23.[3] Specifically, these documents fall under one or more of the classification categories of "intelligence activities," "intelligence sources or methods," "foreign relations or foreign activities of the United States, including confidential sources," and "the capabilities of systems [ ] relating to national security." *Id.* ¶ 23.

Exemption 1 protects from disclosure documents that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and [ ] are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Executive Order 13526 permits an agency to classify information as national security information if:

(1) an original classification authority is classifying the information;

---

[3] All references to the "Gaviria Decl." or "Gaviria Declaration" are to the Declaration of Patricia Gaviria, Director of Information Management Division, Office of the Director of National Intelligence, attached as Exhibit A to Defendant's motion for partial summary judgment, filed on July 26, 2018. *See* Dkt. No. 66-1.

> (2) the information is owned by, produced by or for, or is under the control of the United States Government;
> (3) the information falls within one or more of the categories of information listed in section 1.4 of [Executive Order 13526]: and
> (4) the original classification authority determines that the unauthorized disclosures of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Exec. Order 13526 § 1.1(a). Executive Order 13526 § 1.2(a) categorizes classified information into one of the following three levels:

> (1) "Top Secret" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause exceptionally grave damage to the national security that the original classification authority is able to identify or describe.
> (2) "Secret" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security that the original classification authority is able to identify or describe.
> (3) "Confidential" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause damage to the national security that the original classification authority is able to identify or describe.

Exec. Order 13526 § 1.2(a). All the information withheld has been classified as SECRET and TOP SECRET under Executive Order 13526 § 1.2(a). Gaviria Decl. ¶¶ 24–47.

The Court finds that the government has carried its burden to demonstrate that it properly classified the six opinions under Exemption 1. The Gaviria Declaration describes in detail the categories of information in the six documents and how disclosure of the material could cause damage to national security. Disclosure could reveal critical information about the intelligence community, including its targets, methods, limitations, resources, and sources. *Id.* ¶¶ 24–47. Ms. Gaviria attests that the withheld documents identify, or tend to reveal the identities of, targets from which communications were collected or targeted under FISA. *Id.* ¶ 27. Disclosure of these identities would alert these targets to take countermeasures to avoid surveillance and could also provide adversaries with valuable insight into the intelligence community's methods. *Id.* ¶¶ 27–28. Ms. Gaviria elaborates that the documents also include information that contain the specific type of communication and data collected by the intelligence community, its methods, and its limitations, disclosure of which would neutralize the intelligence community's core mission by allowing adversaries to identify and counteract those methods. *Id.* ¶¶ 30–39. The six documents

13

also contain identities of entities that aid the intelligence community under FISA orders; if disclosed, adversaries could avoid detection and the intelligence community could lose information crucial to the national security and defense of the United States. *Id*. ¶¶ 40–44. Finally, the withheld information includes docket numbers and dates, disclosure of which would allow adversaries to deduce when collection may or may not be occurring. *Id*. ¶¶ 45–47. The Gaviria Declaration concludes that the national security of the United States could be exposed to grave damage should the above information be disclosed. *Id*. ¶¶ 27–47.

The Gaviria Declaration provides sufficient detail regarding the withheld information to make the Exemption 1 classification plausible. *See Hamdan*, 797 F.3d at 770. It does not attempt to categorize distinct information into a single general justification, but gives thorough explanations demonstrating how national security could be compromised if the information is disclosed. Recognizing the Court's "limited institutional expertise on intelligence matters," *see Hamdan*, 797 F.3d at 770, the Court accords substantial weight to Ms. Gaviria's representation that "disclosure of this information could reasonably be expected to cause serious damage, and in some instances, exceptionally grave damage to the national security of the United States." *See* Gaviria Decl. ¶ 30. In the area of national security, "it is conceivable that the mere explanation of why information must be withheld can convey valuable information to a foreign intelligence agency." *See Hamdan*, 797 F.3d at 775. Therefore, the Court finds that Defendant properly withheld information under Exemption 1.

### ii. Exemption 3 – Information Protected by Statute

Defendant contends that the same six documents withheld in full are properly withheld under Exemption 3. Exemption 3 protects information:

> specifically exempted from disclosure by statute ... if that statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refer to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to the paragraph.

5 U.S.C. § 552(b)(3); *Berman v. C.I.A.*, 501 F.3d 1136, 1140 (9th Cir. 2007). In determining whether information has been properly withheld under Exemption 3, the Court asks "whether the

statute identified by the agency is a statute of exemption within the meaning of Exemption 3," and "whether the withheld records satisfy the criteria of the exemption statute." *Hamdan*, 797 F.3d at 776.

According to Defendant, the government properly withheld the six documents under two statutes: (1) Section 102A(i)(1) of the National Security Agency ("NSA") Act of 1947, codified as 50 U.S.C. § 3024(i)(1), and (2) Section 6 of the NSA Act of 1959, codified as 50 U.S.C. § 3605.[4] Dkt. No. 66 at 10–11. Section 102A(i)(1) of the NSA Act of 1947 requires the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). Section 6 of the NSA Act of 1959 states that "nothing in this chapter or any other law [ ] shall be construed to require the disclosure of the organization or any function of the National Security Agency, or any information with respect to the activities thereof." 50 U.S.C. § 3605.

The Court is similarly satisfied that the withheld records would disclose intelligence sources, methods, and information about the function and activities of the NSA. The detail provided under Exemption 1 demonstrates that the government also properly withheld the six opinions under Exemption 3. Because each of the categories of information described in Exemption 1 relates to NSA's intelligence gathering activities, that information falls within Section 102A(i)(1) and Section 6 of the NSA Acts and are properly withheld under Exemption 3.[5]

### iii. Segregability

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). "The burden is on the agency to establish that all reasonably segregable portions of a document have been segregated and disclosed." *Pac. Fisheries*, 539 F.3d

---

[4] Plaintiff does not contest that either of these laws is a statute of exemption within the meaning of Exemption 3, but rather alleges that the USA FREEDOM Act controls and mandates disclosure. Dkt. No. 68 at 16. For the reasons already discussed, the Court disagrees.

[5] The Court need not address the applicability of Exemptions 7(A) and 7(E), because it has found that Defendant properly withheld the six documents in full under Exemptions 1 and 3. Plaintiff's cursory briefing also suggests that the applicability of these exemptions is not a pivotal issue here. *See* Dkt. No. 68 at 17 n.8.

15

United States District Court
Northern District of California

1   at 1148. Nevertheless, the agency is also "entitled to a presumption that [it] complied with the
2   obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.,* 494 F.3d
3   1106, 1117 (D.C. Cir. 2007). Similarly, the Court "may rely on an agency's declaration in making
4   its segregability determination. Agency affidavits that are sufficiently detailed are presumed to be
5   made in good faith and may be taken at face value." *Hamdan*, 797 F.3d at 779. The Court "need
6   not conduct a page-by-page review of an agency's work." *Id*.

7   The Court finds that Defendant has met its burden through its tailored explanations of the
8   withheld documents. The Gaviria Declaration states that these six documents were "reviewed by
9   multiple agencies initially as part of either the second or third batch of documents released in this
10  case in September 2017 and January 2018," demonstrating that Defendant conducted several
11  reviews of the documents in question. Gaviria Decl. ¶ 54. Ms. Gaviria represents that the
12  multiple agencies, in preparing for Defendant's motion for partial summary judgment, reviewed
13  the documents "line by line," demonstrating that there was an extensive and thorough review
14  process. *Id*. ¶ 55. Defendant also provided a description as to why it withheld particular
15  documents and how information could be deduced if certain information was redacted instead of
16  fully withheld. *Id*. ¶ 56.

17  Plaintiff's only argument in response is to compare Defendant's actions here with previous
18  cases that Defendant was involved in. Dkt. No. 68 at 22–23. The Court is not persuaded. For
19  one, the procedural history here indicates that Defendant has gone back to re-evaluate previously
20  withheld FISC opinions and released part of those documents in good faith. Dkt. No. 68 at 3–4.
21  Plaintiff asks the Court to make an inference about Defendant's current actions based on a
22  different set of circumstances, but Plaintiff's speculative suggestion is not enough to overcome the
23  presumption of good faith. *Hamdan*, 797 F.3d at 779. The Court thus finds that Defendant has
24  adequately shown that it "properly withheld and segregated" the documents in question. *See*
25  *Freedom of the Press*, 241 F. Supp. 3d at 1004.

26                **iv.** ***Vaughn*** **Index**

27  In a FOIA action, because only the withholding party will have access to all the facts,
28  district courts have required that the withholding party supply the court and opposing counsel a

"*Vaughn*" index, "identifying each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemptions." *Wiener*, 943 F.2d at 977. Defendant submitted a chart listing the six withheld documents with the type of FISC order or opinion, the number of pages, the exemptions, and confirmation that each document was entirely withheld. Dkt. No. 69 at 18. This chart is meant to be read in conjunction with the Gaviria Declaration and the Hardy Declaration.[6] *See* Dkt. No. 66-1. Plaintiff contends that Defendant's *Vaughn* index is deficient, even apart from Section 402's requirements. Dkt. No. 68 at 19–20.

The Court finds that the *Vaughn* index is adequate. The substance of the Declarations was detailed and specific, unlike the index that the Ninth Circuit found deficient in *Wiener*. *Compare* 943 F.2d at 978–79 (finding "boilerplate" explanations and categorical descriptions, such as "Information of this category is either specific in nature or of a unique character, and thereby could lead to the identification of a source," inadequate for *Vaughn* index), *with* Gaviria Decl. ¶ 41 ("Confirming or denying a relationship between a specific Intelligence Community element and a specific entity that is required by FISA order to provide assistance to the Government would reveal to foreign adversaries whether or not that Intelligence Community utilizes particular intelligence sources and methods and [ ] would compromise actual sources and methods."), *and* Hardy Decl. ¶ 14 ("I can state that Document 1 contains fairly detailed, non-public descriptions of the specific target of a national security investigation, facilities the target was using, and specific sensitive techniques used by the target … disclosure of [certain statutory] language would tend to disclose both the type of target subject to the surveillance as well as the nature of the surveillance"). Unlike the affidavits in *Wiener*, the Gaviria and Hardy Declarations do not include boilerplate or categorical descriptions but instead provide sufficient detail for the Court to adequately review the "soundness of the withholding." *See* at 943 F.2d at 977.

---

[6] All references to the "Hardy Decl." or "Hardy Declaration" are to the Declaration of David M. Hardy, Section Chief of the Record/Information Dissemination Section, Information Management Division, attached as Exhibit B to Defendant's motion for partial summary judgment, filed on July 26, 2018. *See* Dkt. No. 66-1.

17

### v. In Camera Review

The Court may review documents in camera to determine whether exemptions have been properly asserted. 5 U.S.C. § 552(a)(4)(B). In camera inspection, however, should "not be resorted to lightly," *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987), and is "disfavored" where "the government sustains its burden of proof by way of its testimony or affidavits." *Lion Raisins v. Dep't of Agric.*, 354 F.3d 1072, 1079 (9th Cir. 2004). "In camera inspection is particularly a last resort in national security situations like this case—a court should not resort to it routinely on the theory that it can't hurt." *ACLU v. Dep't of Def.*, 628 F.3d 612, 626 (D.C. Cir. 2011). The Court finds that in camera review is unnecessary here as Defendant already provided sufficiently detailed factual information in support of its exemptions in the Gaviria and Hardy Declarations. As discussed, Plaintiff has failed to overcome the good faith presumption to which the declarations are entitled. *Hamdan*, 797 F.3d at 770.

## IV. CONCLUSION

Accordingly, Defendant's motion for partial summary judgment is **GRANTED**, and Plaintiff's motion for partial summary judgment is **DENIED**.

The parties are **ORDERED** file a short joint statement by April 5, 2019, informing the Court whether any issues remain to be resolved given today's order and Defendant's prior agreement to reprocess and release certain documents by August 2018. *See* Dkt. No. 62 at 2; Dkt. No. 66 at 4. If no dispute remains to be resolved in this Court, the parties should confirm this in their statement. If the parties believe any issues remain, they shall appear for a case management conference on April 9, 2019 at 2:00 p.m. in Oakland, Courtroom 2, 4th Floor to discuss a plan and schedule for promptly resolving any remaining issues.

**IT IS SO ORDERED.**

Dated: 3/26/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge